UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOCTOR'S FINANCIAL NETWORK, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DRDISABILITYQUOTES.COM LLC,<br><br>Defendant.<br><br>DRDISABILITYQUOTES.COM LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>DOCTOR'S FINANCIAL NETWORK, INC., and CHARLES KRUGH,<br><br>Third-Party Defendants. | Civ. No. 2:22-cv-02149-WJM<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.C.**

Plaintiff Doctor's Financial Network, Inc., ("Plaintiff" or "DFN") brings this trademark infringement action against defendant DrDisabilityQuotes.Com LLC ("Defendant" or "DDQ") for alleged violations of the Lanham Act, 15 U.S.C. § 1114. Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. ECF Nos. 54 & 56. For the reasons set forth below, Defendant's motion for summary judgment is **DENIED**, and Plaintiff's motion for summary judgment is **DENIED**.

**I.  BACKGROUND[1]**

Plaintiff is a California corporation that provides insurance brokerage services and offers individual disability insurance and related products to physicians and dentists. *See*

---

[1] The facts in this section are taken from the parties' statements of material facts and the exhibits attached thereto. For ease of reference, the Court will use the following abbreviations to refer to documents in the record:

DSOMF at ¶ 1. Defendant is a New Jersey limited liability company that also offers disability insurance to physicians via its website DrDisabilityQuotes.com. Compl. at ¶¶ 3, 14-15, ECF No. 1; PSOMF at ¶ 6. Third-Party Defendant Charles Krugh ("Krugh" or "Third-Party Defendant") is the sole owner of Plaintiff. Third-Party Compl. at ¶ 3, ECF No. 10. In dispute are two U.S. Trademark Registrations owned by Plaintiff: Nos. 3,085,018 ("the '018 registration" or the "Stethoscope Mark") and 5,744,284 ("the '284 registration" or the "Doctor Disability Mark"). PSOMF at ¶ 1, 3. The '018 registration contains the phrase "Doctor Disability" and depicts a stethoscope as shown below.



The mark was registered on April 25, 2006 and contains the disclaimer that "no claim is made to the exclusive right to use 'Doctor Disability', apart from the mark as shown." Krugh Decl. at Ex. 124. The '284 registration depicts the mark "Doctor Disability" as shown below.

## Doctor Disability

This mark was registered on May 7, 2019 and contains the disclaimer that "[n]o claim is made to the exclusive right to use the following apart from the mark as shown: 'Disability.'" *Id.* at Ex. 125. Plaintiff has used both the '018 and the '284 registrations "continuously since…as early as 2004 for insurance brokerage services." PSOMF at ¶ 4. Plaintiff has used the marks on envelopes (presently and for the past ten years), presentation folders to customers (presently and for the past ten years), a YouTube video uploaded in January 2020, email signatures (from 2004 to 2019), Plaintiff's website (from 2004 to 2019), and Plaintiff's Google Business Profile (from 2016 to present). Krugh Decl. at ¶¶ 5-11. Defendant began using the mark "DrDisabilityQuotes.com" for insurance brokerage services in October 2015. PSOMF at ¶ 6; DSOMF at ¶ 45. Krugh became aware of Defendant's use of "DrDisabilityQuotes.com" in or around 2019 "either…on a 'White

---

"**PSOMF**" – Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 (ECF No. 54-3)

"**Krugh Decl.**" – Declaration of Charles Krugh in Support of Plaintiff's Motion for Summary Judgment (ECF. No. 54-2)

"**Gray Decl.**" – Declaration of Gordon E. Gray in Support of Plaintiff's Motion for Summary Judgment (ECF No. 54-1)

"**DSOMF**" – Defendant's Statement of Material Facts (ECF No. 56-2)

"**Markin Decl.**" – Declaration of Gene Markin, Esq. in Support of Defendant's Motion for Summary Judgment (ECF No. 56-3)

Coat Investor' newsletter or [when] asked if [Krugh] was affiliated with Mr. Bhayani or [Defendant]." [2] Krugh Decl. at ¶ 13. Defendant received notice of Plaintiff's trademark rights in the "Doctor Disability" mark at least as early as December 2, 2019. PSOMF at ¶ 7. Defendant filed a petition to cancel Plaintiff's '018 and '284 registrations on May 13, 2020, which has been suspended pending the outcome of this action. *Id.* at ¶ 8. In a deposition for this action, Mr. Bhayani testified that there is confusion between the parties' marks since both parties sell the same type of services and have the same types of potential customers. Markin Decl. Ex. J. Plaintiff also experienced customers contacting them believing they are contacting the Defendant. DSOMF at ¶ 54.

In 2018, Plaintiff began using a new mark that contains the phrase "Doctor Disability" and a depiction of a blue cross inside a shield as shown below (the "Shield Logo"). DSOMF at ¶ 26.

**DoctorDisability**

After adopting the Shield Logo, Plaintiff began using it on its website, promotional materials, and email communications and has since ceased the use of the Stethoscope Mark. *Id.* at ¶¶ 27-28; Krugh Dep. at 40:1-41:22, 80:2-81:1, 128:8-12. Defendant contends that it heavily advertises on the White Coat Investor ("WCI") website, of which Krugh should have been aware, since January 2016. DSOMF at ¶ 48-49. Since January 2016, Defendant has been on WCI's list of 10 preferred disability insurance providers. Plaintiff filed suit against Defendant for infringement of the '18 and '284 registrations in the United States District Court for the Central District of California on December 10, 2021, and it was dismissed without prejudice on March 4, 2022. PSOMF at ¶ 9.

## II.  PROCEURAL BACKGROUND

Plaintiff filed a five-count complaint in this Court against Defendant on April 13, 2022. Compl., ECF No. 1. Count One alleges trademark infringement in violation of 15 U.S.C. § 1114 through Defendant's use of the DRDISABILITYQUOTES mark. *Id.* at ¶¶ 20-25. Count Two alleges false designation of origin in violation of 15 U.S.C. § 1125(a) through Defendant's use of a mark "confusingly similar to [P]laintiff's DOCTORDISABILITY (+Design) and Doctor Disability trademarks." *Id.* at ¶¶ 26-30. Count Three alleges unfair competition in violation of 15 U.S.C. § 1125(a). *Id.* at ¶¶ 31-35. Count Four alleges common law unfair competition with the same factual allegations as above. *Id.* at ¶¶ 36-37. Lastly, Count Five alleges common law trademark infringement with the same factual allegations as above. *Id.* at ¶¶ 38-39. On May 19, 2022, Defendant filed an answer containing affirmative defenses as well as a Third-Party Complaint against both Plaintiff DFN and Third-Party Defendant Krugh. ECF No. 10. The Third-Party Complaint contains three counts. Count One alleges cancellation of the Stethoscope Mark, specifically that prior to filing its application to register the Doctor Disability

---

[2] Mr. Bhayani is the managing partner of Defendant.

3

Mark, Plaintiff completely ceased using the Stethoscope Mark in commerce and had no intention to resume use of the mark. *Id.* at ¶¶ 27-33. Count Two alleges fraud on the U.S. Patent & Trademark Office ("USPTO"), specifically, Plaintiff and Third-Party Defendant Krugh stated under oath that the Doctor Disability Mark ('284 registration) became distinctive as evidenced by the ownership for the same mark for sufficiently similar goods and services under the active '018 registration, but failed to disclose to the USPTO that Plaintiff and Krugh ceased using the '018 registration and knew or should have known that Defendant was using a similar mark likely to cause confusion. *Id.* at ¶¶ 34-49. Count Three alleges likelihood of confusion, specifically, that Defendant had acquired common law rights to the DrDisabilityQuotes.com Mark and was using the mark in commerce prior to Plaintiff and Krugh's adoption and use of a substantially similar mark. *Id.* at ¶¶ 50-58. Both parties filed cross motions for summary judgment on May 3, 2024. ECF Nos. 54, 56. Oppositions were also filed on June 7, 2024, and replies on June 28, 2024. ECF Nos. 57-58, 60-61.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Not every factual dispute will preclude summary judgment, and those concerning "irrelevant or unnecessary" facts will not factor into the Court's analysis. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Rather, "a fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson*, 477 U.S. at 248). Similarly, a dispute with respect to a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of establishing that no genuine issue of material fact remains for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence. . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. If, however, the burden of persuasion at trial would be on the nonmoving party, the movant may satisfy its burden by either: (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* (citations omitted). Once the moving party meets this burden, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (emphasis in original and internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). This requires the nonmoving party to present actual evidence that creates a genuine dispute for trial – reliance on unsupported assertions, speculation, or conclusory allegations is insufficient to defeat a properly supported motion for summary judgment.

4

*See Solomon v. Soc'y of Auto. Eng'rs*, 41 F. App'x 585, 586 (3d Cir. 2002) (citing *Celotex*, 477 U.S. at 324); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) (explaining that a nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

In deciding a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). Put differently, the Court's sole task in deciding a motion for summary judgment is simply "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The standard for deciding whether to grant a summary judgment motion is the same even where, as here, the parties files cross-motions. *See In re Cooper*, 542 F. Supp. 2d 382, 385-86 (D.N.J. 2008). In ruling on cross-motions for summary judgment, the Court must evaluate the competing motions independently under the applicable standard. *See Boardwalk Regency Corp. v. Unite Here Local 54*, No. 08-0016 (JBS), 2009 WL 540675, at *4 (D.N.J. Mar. 3, 2009).

## IV. DISCUSSION

### a. Plaintiff's Motion for Summary Judgment

Plaintiff argues that Defendant's use of DrDisabilityQuotes.com infringes on Plaintiff's '018 registration as a matter of law. Specifically, Plaintiff contends the '018 registration became incontestable per 15 U.S.C. § 1065 and § 1115(b) and therefore the only issue to be determined is whether there is a likelihood of confusion between the marks. In opposition, Defendant argues the determination of likelihood of confusion is generally a question of fact appropriate for a jury's determination. Furthermore, given "the contested trademark registrations, the absence of evidence to support a finding that Plaintiff's Doctor Disability mark achieved secondary meaning prior to when [Defendant] started using its DrDisabilityQuotes.com mark, and paltry evidence of actual consumer confusion involving a mistaken purchase" the Court should deny Plaintiff's motion. Def. Opp. at 2.

To prove trademark infringement, Plaintiff must show that (1) the mark "Doctor Disability" is valid and legally protectable, (2) Plaintiff owns the mark, and (3) Defendant's use of a similar mark is likely to create confusion concerning the origin of the goods of services. *See Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 101 (3d Cir. 2006) (citing *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466 (3d Cir. 1994)). However, there remains a genuine dispute of a material fact regarding the validity of the Doctor Disability mark, despite "*prima facie* evidence of ownership and validity."[3] Pl. Mot. at 5.

---

[3] Despite the fact the Stethoscope mark ('018 registration) became incontestable per 15 U.S.C. § 1065 and § 1115(b), does not then mean that the Doctor Disability mark ('284 registration) similarly became incontestable or is prima facie evidence of its validity, especially considering the disclaimer within the '018 registration.

5

As discussed in more detail *infra* IV(b)(ii) the parties dispute the subjective intent of Krugh when making allegedly fraudulent misrepresentations to the USPTO with respect to the Doctor Disability mark registration declaration. Similarly, there are genuine disputes of material fact regarding intent to abandon precluding summary judgment as discussed *infra* IV(b)(i). Therefore, the Court will **DENY** Plaintiff's motion for summary judgment on Defendant's alleged trademark infringement.

### b. Defendant's Motion for Summary Judgment

#### i. Abandonment

In its motion for summary judgment, Defendant argues that the '018 registration, the Stethoscope Mark, has been abandoned. Specifically, Plaintiff abandoned the '018 registration when it ceased using the Stethoscope Mark at the end of 2018 when it adopted a new logo. Since March of 2019, Plaintiff has not used the Stethoscope Mark in commerce or in connection with the offering and rendering of disability insurance brokerage services. In opposition, Plaintiff argues Defendant has failed to produce evidence of abandonment and, even if it did, abandonment remains an issue of fact. Defendant replies that Plaintiff has not presented evidence of sufficient use in commerce since Plaintiff relies "on old marketing materials and a YouTube video in support of continued use." Defendant further replies that an intent to abandon is presumed when a mark holder does not engage in a bona fide use of the mark for three consecutive years.

Abandonment is provided for in the Lanham Act, which states that a mark is deemed abandoned:

> (a) When its use has been discontinued with intent not to resume. Intent not to resume may be inferred from circumstances. Nonuse for three consecutive years shall be prima facie evidence of abandonment . . . [or]
>
> (b) When any course of conduct of the owner, including acts of omission as well as commission, causes the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark.

15 U.S.C. § 1127. "To establish the defen[s]e of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon." *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 138 (3d Cir. 1981); *see also PBI Perf. Prods. v. NorFab Corp.*, No. 05-4836, 2007 U.S. Dist. LEXIS 58689, at *8 (E.D. Pa. Aug. 3, 2007). "Acts which unexplained would be sufficient to establish an abandonment may be answered by showing that there never was an intention to give up and relinquish the right claimed." *Philadelphia Jaycees*, 639 F.2d at 138. Abandonment must be strictly proved, and evidence must be clear and convincing. *See id.* at 139; *InterState Net Bank v. NETB@NK, Inc.*, 348 F. Supp.

2d 340, 348 (D.N.J. 2004). Here, although Defendant has provided some evidence of Plaintiff's cessation of the '284 mark, it is far from clear and convincing. There remain genuine disputes of material facts with respect to any intent to abandon the mark. Plaintiff adopted a new logo in 2018 but has continued to use the '284 mark in some instances. The Court, therefore, will **DENY** Defendant's motion for summary judgment on abandonment grounds.

### ii. Cancellation

Defendant next argues that the '284 registration, the Doctor Disability mark, was obtained fraudulently and therefore the registration should be cancelled. Defendant points to several alleged material misrepresentations Krugh made to the USPTO regarding the distinctiveness of the '284 registration. Specifically, Defendant contends that Krugh relied on his ownership of the '018 registration and claimed "substantial exclusive and continuous use" of the '284 registration when he knew or should have known that competitors were openly and notoriously using the Doctor Disability mark or a similar variation. Defendant also highlights that shortly before filing the application, Krugh had discovered a competitor using the name "Doctor Disability Shop" and had his lawyers send a cease-and-desist letter. The competitor continued to use the name "Doctor Disability Shop" to provide the same services as Plaintiff and, despite learning of this infringement, Krugh did not disclose to the USPTO that competitors with similar names existed. Instead, Krugh submitted a declaration attesting to five years of substantially exclusive and continuous use of the mark in commerce. In opposition, Plaintiff argues that Defendant has not made a showing of clear and convincing evidence Krugh made a false, material representation with the intent to deceive the USPTO. In his deposition, Krugh testified that the '018 mark was in continuous use from at least as early as 2004 and when the trademark application for the '284 registration was filed on August 29, 2018, the '018 registration had been incontestable since 2011. Plaintiff further argues that incontestable trademarks are conclusively proven to have secondary meaning and acquired distinctiveness.

"The Lanham Act provides that a third party may petition for cancellation of a registered trademark if the registration was procured by fraud." *Covertech Fabricating, Inc. v. TVM Bldg. Prods.*, 855 F.3d 163, 174-75 (3d Cir. 2017) (citing 15 U.S.C. §§ 1064(3), 1120). For such a claim to succeed, "a showing. . . must be made by clear and convincing evidence that the 'applicant or registrant knowingly ma[de] a false, material representation with the intent to deceive the PTO. That intent to deceive can be inferred from indirect or circumstantial evidence, indicating that the registrant actually knew or believed that someone else had a right to the mark'" *Id.* (internal citations omitted) (quoting *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009); citing *Marshak v. Treadwell*, 240 F.3d 184, 196 (3d Cir. 2001)). The Court is not persuaded that Defendant has proven with clear and convincing evidence that Plaintiff procured the '284 registration by fraud. There exists a genuine dispute of material facts regarding whether Krugh knowingly made

7

a false, material representation with the intent to deceive the USPTO that other competitors, such as Defendant, was allegedly using the "Doctor Disability" mark. Furthermore, Defendant has failed to show through clear and convincing evidence that Krugh had the subjective intent to deceive the USPTO. *See United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc. v. Int'l Tang Soo Do Moo Duk Kwan Ass'n*, No. 3:12-CV-00669, 2014 U.S. Dist. LEXIS 107212, at *17-18 (M.D. Pa. Aug. 4, 2014) ("If the declarant who, in procuring a trademark, swears that the applicant has a superior right to use the mark 'subjectively believes [his own declaration], there is no fraud, even if the declarant was mistaken.'") (quoting *Sovereign Military Hospitaller Order of St. John of Jersualem, of Rhodes, and of Malta v. Florida Priory of Knights Hospitallers of Sovereign Order of St. John of Jerusalem*, 702 F.3d 1279, 1289 (11th Cir. 2012)). The Court, therefore, will **DENY** Defendant's motion for summary judgment on cancellation grounds.

### iii. Priority Use

Defendant argues that the Doctor Disability mark is a descriptive mark that needed to acquire secondary meaning in order to be protected. Defendant contends that Plaintiff has failed to show the mark achieved secondary meaning through a lack of acquired distinctiveness prior to Defendant's use of the mark in October 2015. Lastly, Defendant argues Plaintiff cannot use the earlier Stethoscope mark to "tack onto" its later use of the Doctor Disability mark because the two marks are noticeably distinguishable and deliver different commercial impressions. In opposition, Plaintiff argues that it has established priority because Defendant did not use DrDisabilityQuotes.com until October of 2015. Plaintiff could also rely on the Stethoscope mark to establish priority despite the disclaimer because "a disclaimer of a portion of a trademark does not remove the disclaimed portion completely from the trademark." Pl. Opp. at 10.

Competing claims of ownership of a mark are determined by priority of use and market penetration. *MNI Mgmt. Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 405 (D.N.J. 2008). Further, the "party who first uses a mark in commerce is said to have priority over others." *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 909 (2015). To do so, the mark must be used "in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Lucent Info. Mgmt., Inc. v. Lucent Techs., Inc.*, 186 F. 3d 311, 315 (3d Cir. 1999) (internal quotation marks omitted). "A non-exclusive list of factors which may be considered includes the extent of sales and advertising leading to buyer association, length of use, exclusivity of use, the fact of copying, customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, the number of sales, the number of customers, and actual confusion." *Ford Motor Co. v. Summit Motor Prods.*, 930 F.2d 277, 292 (3d Cir. 1991).

The Court finds genuine disputes of material fact preclude summary judgment in Defendant's favor with respect to whether the '284 registration has obtained secondary meaning. Factual disputes exist regarding distinctiveness and indistinguishability between the '018 and '284 registrations. The Court, therefore, will **DENY** Defendant's motion for summary judgment on priority use grounds.

### iv. Damages

Lastly, the Defendant argues summary judgment must be entered against Plaintiff because Plaintiff failed to produce any evidence regarding damages. However, Plaintiff's complaint seeks injunctive relief enjoining Defendant from further alleged trademark infringement as well as damages. Furthermore, Plaintiff presented evidence of Defendant's profits as a measure of Plaintiff's damages and is not required to show actual damages to recover under 15 U.S.C. § 1117. Defendant's motion for summary judgment on damages grounds is **DENIED**.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is **DENIED** in full. Defendant's cross-motion for summary judgment is **DENIED** in full. An appropriate order follows.

_____
William J. Martini, U.S.D.J.

Date: July 30, 2024